FILED
SEP - 5 2014
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. **4:14CR00279 AGF** ) |
| REGINA DANKO, | ) ) |
| Defendant. | ) ) |

## INFORMATION

The United States Attorney charges that:

### COUNT I

*Introduction*

*The Contracting Model*

1. The Veterans Entrepreneurship and Small Business Development Act of 1999 established an annual goal of awarding at least three percent of the total value of all federal prime and subcontract awards to small businesses owned and controlled by service-disabled veterans ("SDVs"). The Veterans Benefits Act of 2003 added a contracting mechanism to the 1999 law to help federal agencies reach this three percent goal. The mechanism established by the 2003 law is known as the service-disabled veteran-owned small business program or "SDVOSB."

2. A business must meet the following criteria to qualify for the SDVOSB program:

    a. Majority owned by a veteran with a service-connected disability as determined by the United States Department of Veterans Affairs:

    b. The veteran must receive 51% or more of the company's profits or distributions;

    c.    The veteran must control the day-to-day management, daily operations and long term decision making of the business;

    d.    The veteran must hold the highest officer position in the business.

3. Certain government agencies set aside certain contract for SDVOSBs only. Such contracts can only be bid on and awarded to SDVOSBs and the set aside nature of the work is expressly set forth in the bid solicitation language.

4. The General Services Administration (GSA) maintains two central databases to be used by federal agencies collecting information about federal contractors, including contractors seeking SDVOSB work, including set aside work. A contractor seeking set aside or other work as an SDVOSB makes representations about the nature of the company through these databases upon which the contracting agencies rely.

*The Individuals, Companies and the Contract*

5. At all relevant times, Brian Gerkens was an individual residing in the Eastern District of Missouri working in the building maintenance industry.

6. At all relevant times, Guy Young was a retired law enforcement officer residing in the Eastern District of Missouri. Guy Young was a service-disabled veteran due to a hearing loss suffered while in the military service of the United States.

7. Before 2007, Gerkens and Young did not know one another.

8. In early 2007, Gerkens was helping to manage a building maintenance contract in St. Louis and, with his employer, became aware of the opportunities for SDVOSBs to obtain set aside contracts through the aforementioned contracting model.

9. On May 29, 2007, Gerkens and Young incorporated True Blue Building Maintenance

3

("True Blue") under the laws of the State of Missouri. True Blue was incorporated after the GSA announced the contract solicitation for cleaning the Robert A. Young Federal Building in downtown St. Louis that is the subject of this case (the "Young Building contract").

10. At the time he met and solicited Young to incorporate True Blue, Gerkens was an employee of Tri-Ark Industries, a company then operating numerous building cleaning and maintenance contracts at federal buildings around the country including in the Eastern District of Missouri ("Tri-Ark"). Gerkens reported to Joy Ciocca, who managed the day-to-day operations of Tri-Ark with the company owner Defendant Regina Danko. Tri-Ark had been in business for many years by 2007 and operated out of a headquarters in the Philadelphia, Pennsylvania suburbs.

11. Once Gerkens had incorporated True Blue with Young, Ciocca and Defendant arranged the legal paperwork for True Blue and Tri-Ark to form a joint venture, with majority control residing with True Blue, called Diversified Ventures ("Diversified" or "the company"). Diversified was created to bid on the Young Building contract as a favored SDVOSB. Gerkens, Ciocca and Defendant made representations relating to the control and operation of Diversified, Tri-Ark and True Blue by sending and causing to be sent wire communications to the GSA computer-based contracting databases involved in the SDVOSB certification process.

12. The Young Building contract was awarded on June 27, 2007 and, by operation of a number of extensions, expired on or about July 31, 2012.

*The Scheme and False Statements*

13. On paper, Diversified appeared to the GSA and other contracting authorities to be a SDVOSB which complied with the rules and regulations for such companies. For example, Gerkens and Defendant represented in the contract application that Young would be involved in the day-to-day operations of the joint venture. In truth, Young had no meaningful involvement in

4

the business and only went to the building at which the work was being done a few times. Additionally, Gerkens and Defendant represented in the contract application that Young would receive a majority of the company's profits. In truth and fact, Young received a very small fraction of the profits from the Young Building Contract. The small amount Young did receive was determined entirely by Gerkens, Ciocca and Defendant. At the expiration of the Young Building contract in 2012, Young was informed Tri-Ark would not be doing business with him anymore.

14. Defendant and Ciocca made all of the decisions about True Blue's operations, including the compensation of its principals, even though they held no office or employment with True Blue.

*The Payments to Diversified Under the Young Building contract*

15. Beginning on October 10, 2007 and continuing through August 16, 2012, in reliance on, among other things, the aforementioned misrepresentations about the workings and control of True Blue and the role of Young, the United States GSA made more than one hundred and forty separate payments to Diversified under the Young Building contract.

16. The total amount collected under the Young Building contract by Diversified was $8,742,272.19.

*The Offense Conduct*

17. Between on or about May 1, 2007 and continuing through on or about July 31, 2012, the defendant,

**REGINA DANKO,**

did combine, conspire and confederate with others known and unknown to commit offenses against the United States, to wit: false statements in a matter within the jurisdiction of the United

States in violation of Title 18, United States Code Section 1001, theft of government funds in violation of Title 18, United States Code Section 641 and wire fraud in violation of Title 18, United States Code Section 1343 and, during the existence of said agreement, one or more over acts in furtherance and execution of the same was committed by a member of the conspiracy, to wit: in excess of fifty claims for payments of government funds by Diversified.

All in violation of Title 18 United States Code Section 371.

## FORFEITURE ALLEGATION

18. The allegations contained in paragraphs 1 through 17 are hereby re-alleged and incorporated by reference.

19. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 371, as set forth in Count One, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said offense.

20. Specific property subject to forfeiture includes, but is not limited to, the following:

   a. $220,931.47 in funds from the Vanguard Windsor II Fund Admiral Shares, Fund-Account #573-09905064265, provided to the FBI by Vanguard, pursuant to a seizure warrant via check #19603835 dated February 22,2013;

   b. $2,175,643.52 in funds from the Vanguard Pennsylvania Tax-Exempt Money Market Fund, Fund-Account #0063-09905893436, provided to the FBI by Vanguard, pursuant to a seizure warrant via check #19603831 dated February 22,2013;

   c. $30,821.01 in funds from the Vanguard Prime Money Market Fund, Fund-Account #0030-09905893436, provided to the FBI by Vanguard, pursuant to a seizure warrant via check #19603828 dated February 22,2013;

   d. $12,150.00 in funds from Vanguard, Fund-Account #0030-09905064265, provided to the FBI by Vanguard, pursuant to a seizure warrant via check #1267116 dated March 5, 2013;

6

21. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty, the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Thomas C. Albus*

Thomas C. Albus, #46224MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri   63102
(314) 539-2200

UNITED STATES OF AMERICA )
EASTERN DIVISION )
EASTERN DISTRICT OF MISSOURI )

I, Thomas C. Albus, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

_____
Thomas C. Albus, #46224MO

Subscribed and sworn to before me this 5th day of September 2014.

/s/ Gregory Linhares
_____
CLERK, U.S. DISTRICT COURT

By: _____
DEPUTY CLERK